# CHARLESTON.

BENT *v.* CITY OF ELKINS.

Submitted March 3, 1910.   Decided March 7. 1911.

1.  BOUNDARIES—*Establishment—Boundary Between Private Lot and City Street.*

    The location of a boundary line between a private lot and a city street, left in a state of uncertainty by the title papers and dependance upon dedication and acceptance of the street by mere conduct, is determinable by the rules applicable in other cases of disputed and uncertain boundary lines. (pp. 12-14).

2.  SAME.

    In such case, long continued possession by both parties according to a certain line is evidence of an agreement as to the location of the line, and, in the absence of circumstances countervailing it, controling and binding. (pp. 12-14).

    (BRANNON, JUDGE, absent.)

Appeal from Circuit Court, Randolph County.

Bill by Maggie C. Bent against the City of Elkins. Decree of dismissal, and plaintiff appeals.   *Reversed and Rendered.*

69 W. Va.

*James A. Bent* and *E. A. Bowers,* for appellant.

*Samuel T. Spears,* for appellee.

Poffenbarger, Judge:

Claiming a small triangle of land in the City of Elkins as a part of her lot, Maggie C. Bent obtained an injunction to prevent the city from taking it, as a part of one of the streets, under its claim to the same for such purpose, founded upon the theory of a dedication and acceptance. Upon a final hearing, the preliminary injunction was dissolved and the bill dismissed.

The triangle is at the point at which five streets meet, as they were actually surveyed, staked off on the ground and platted. It extends over the line of one of them, Elm Street, as platted, and out into the space left for street purposes, as shown by the plat, producing an acute angle around which persons and vehicles must pass, in going from Elm Street to Guy and Fayette Streets and *vice versa.* The lot of which it is a part, according to Mrs. Bent's claim, is one of a large number, constituting what is known as the Weese Addition, all laid down on the plat thereof, showing streets and alleys as well as the lots. A great many copies of the plat were distributed by Weese while he was selling the lots. Some of the deeds by which he conveyed lots referred to the plat for description thereof, and the plat was recorded in the clerk's office of the county court of Randolph county, though not as a part of any particular deed. The deed to Mrs. Bent for the lot here involved describes it as Lot No. 87 in Block 10 of the Weese Addition and as bounded on the North by Lot No. 86, on the West by Elm Street, on the South by Guy Street and on the East by a twenty foot alley. No express reference is made to the plat. The plat was made about 1890, between which date and Nov. 12, 1897, the date of the deed to Mrs. Bent, a good many lots were sold. Admitting the genuineness of the plat and the location of the lot and streets, as shown thereon, Weese testified that, in throwing this triangle into the street, his engineer had departed from his instructions, and he had directed him to correct the plat but he had failed to do so. Before this lot was conveyed by Weese, he laid, or caused to be laid, board side walks about the lot, treating the triangle as a part of it, and says these walks were laid in accordance with an order of the city council as he understood it. Later and after the conveyance

to Mrs. Bent, brick side walks were laid in the same way and have been since maintained.  Though Weese says no plowing was done on Elm Street before he made this conveyance, another witness says he plowed there for the city about 1891 or 1892 and the furrows, marking the street, were where the gutters are now.  Other improvements were made on Elm Street by the city as its location is claimed by the plaintiff, and no objection to the location nor claim to the triangle was made by the city until 1905, when it claimed the right to lay a permanent brick side walk in front of Mrs. Bent's lot on that street in accordance with the plan of the plat.  She objected and, on July 5, 1906, the counsel passed an order requiring her to vacate the small parcel of land in controversy, within thirty days, and ordering the street commissioner to re-lay the side walk in accordance with the city's claim and clear the street of all obstruction, in case of her failure to do so.

If the land in controversy belongs to the plaintiff, the jurisdiction by injunction is free from doubt.  Injunction is the usual and most appropriate remedy to prevent the taking of private property for public use without compensation.

There was no dedication of the streets by deed.  If there was a dedication of this triangle it was a dedication by mere conduct.  If there was an acceptance of such dedication, before the year 1905, it was by conduct also.  No ordinance, covering the triangle, is shown, until July, 1906, and no work was done by the city on the land in dispute.  Its acts of acceptance by work done, prior to 1905, excluded the triangle.  In the meantime, Mrs. Bent was in actual possession of it, claiming title.  Under these circumstances, we do not think the acceptance of part of the platted street can be regarded as an acceptance of the whole thereof.  This triangle was not set apart for public purposes by express exception from the deed to Mrs. Bent, nor conveyed to the city, as in the Weston and Grafton cases, relied upon in argument.  Her deed called for Elm Street as its western boundary, without defining that boundary by reference to the plat, and the line thereof could be fixed by parol agreement without violence to the terms of the deed or conflict therewith, and seems clearly to have been so fixed and determined.  As between the city and Mrs. Bent, possession was taken and held for a number of years in accordance with her claim, and both have

made valuable improvements with reference to that line. The triangle now constitutes a part of her lawn and bears shade trees, grass and shrubbery. A disputed boundary line may be fixed in the manner here indicated. *Gwynn* v. *Schwartz,* 32 W. Va. 487. We think this one has been, and this conclusion does not conflict with the principles applied in *Wood* v. *Huntington,* 47 W. Va. 645, *Ralston* v. *Weston,* 46 W. Va. 544, *Jarvis* v. *Grafton,* 44 W. Va. 453, and *Gas Co.* v. *Parkersburg,* 35 W. Va. 605. In those cases the deeds for the lots expressly excluded the land in controversy or it had been dedicated by deed. Here the question is not whether the city has lost land previously acquired for street purposes, but whether it ever acquired it. It is a question of boundary determinable by rules and principles applicable in other cases.

*Edwards* v. *Land Co.,* 56 W. Va. 43, is not applicable. It deals with the question of private easements created by conveyances of platted lots. That is a matter not involved here.

That the husband and agent of the complainant held the positions of Mayor of the City and member of its council, when some of the acts of location, recognition and acceptance may have been done by the city, cannot alter this conclusion. There is evidence tending to show acceptance of the street, as now located, before Weese conveyed the lot or the complainant acquired any interest in it, and no doubt councils of which her husband was not a member and other persons acting as mayor affirmatively recognized the present location. James A. Bent is not shown to have been mayor, except for the year 1899, nor a member of the council, except for the year 1898.

Our conclusion is to reverse the decree complained of, overrule the demurrer and motion to dissolve the injunction, re-instate the temporary injunction and perpetuate it, and decree costs to the appellant in this Court and the court below.

*Reversed and Rendered.*